RECEIVED
MAR 26 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CINDY PATTON** | : | **DOCKET NO. 10-1467** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **ERIC J. HOLDER, JR.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is "Defendant's Motion for Summary Judgment" (R. #32), wherein defendant seeks to dismiss plaintiff's claims of retaliation, sex and race discrimination. Defendant maintains that it has articulated a legitimate non-discriminatory reason for its actions. Defendant also asserts that because plaintiff cannot establish that she was "clearly better qualified" or that the reasons given were false or unworthy of credence, she cannot establish pretext. Finally, defendant maintains that plaintiff's race discrimination claim must be dismissed because she cannot establish a *primae facie* case.

## FACTUAL STATEMENT

Plaintiff is a Caucasian female and has been employed by the Federal Bureau of Prisons' Federal Correctional Complex ("BOP"), in Oakdale, Louisiana since October 1995.[1] In her complaint, plaintiff alleges that she was not selected for the position of Cook Supervisor with the BOP on the bases of race, sex and reprisal.

---

[1] Complaint, ¶ 12, R. #1.

On December 28, 2006, vacancies for the Cook Supervisor position were announced.[2] Plaintiff, a white female, applied for the position on January 19, 2007.[3] Aaron Jones, Food Service Administrator, and Chris Franklin, Employee Services Specialist formed the promotion board and reviewed and ranked the applicants.[4] The "best qualified" list was then forwarded to Warden Joseph Young, an African American male.[5] Plaintiff and three males were included on the "best qualified" list.[6] The applicants were placed in alphabetical order and Warden Young was not provided the promotion ranking form used by the promotion board to determine who would be on the "best qualified" list. On February 23, 2007, Warden Young selected Mr. Dupre and Mr. Greer for the Supervisor vacancies, and on March 9, 2007, Warden Young selected Mr. Fontenot for the vacancy.[7] The selectees were white males.

Plaintiff had engaged in prior EEO activity in 2005 against Associate Warden Brouillette. On August 10, 2005, during the investigation of that case Warden Young provided a statement. On January 27, 2006, plaintiff reported allegations to the Office of Internal Affairs (OIA) of misconduct concerning Warden Young's statement–specifically that Warden Young had provided inconsistent or inaccurate statements to an EEO investigator regarding the earlier EEO complaint filed by

---

[2] Defendant's exhibit 2.

[3] Complaint, ¶ 20, R. #1.

[4] Id., ¶ 21, R. #1.

[5] Id., ¶ 22 and 28, R. #1.

[6] Id., ¶ 2 and 22, R. #1.

[7] Id., ¶¶ 12 and 23.

2

plaintiff against Brouillette.[8] On May 21, 2007, the Regional Director of the Federal Bureau of Prisons proposed that Warden Young be suspended for twenty-one days for making inconsistent and/or inaccurate statements.[9] On July 7, 2007, the Director of the BOP ultimately decided to suspend Warden Young for fifteen days.[10]

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[11] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[12] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[13] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[14] Once the movant makes this showing, the burden shifts to the non-moving

---

[8] Defendant's exhibit 3, Declaration of John T. Dignam, ¶ 4. On May 15, 2006, Warden Young had responded to plaintiff's allegations by providing an affidavit to the OIA. Id., ¶ 6a.

[9] Defendant's exhibit A, attached to exhibit 4, Declaration of Kitty B. Suddeth, Regional Human Resource Administrator.

[10] Exhibit B, attached to defendant's exhibit 4.

[11] Fed. R.Civ. P. 56(c).

[12] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[13] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[14] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

party to set forth specific facts showing that there is a genuine issue for trial.[15] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[16] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[17] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[18]

## LAW AND ANALYSIS

Plaintiff was a Correctional Officer when she applied for the Cook Supervisor vacancy. Plaintiff alleges that Warden Young's decision not to hire her for the Cook Supervisor vacancy was motivated by both discriminatory and retaliatory animus. Defendant claims that it has articulated legitimate non-discriminatory reasons for hiring the three other candidates – specifically that they were more qualified for the position than plaintiff.

*Title VII analysis*

In an employment discrimination case alleging disparate treatment, the court's focus is on whether a genuine issue of fact exists as to whether the defendant intentionally discriminated against the plaintiff.[19] Title VII prohibits employers from discriminating with respect to compensation,

---

[15] Anderson, 477 U.S. at 249.

[16] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[17] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[18] Anderson, 477 U.S. at 249-50.

[19] Grimes v. Texas Dept. of Mental Health & Mental Retardation, 102 F.3d 137, 139 (5th Cir. 1996); LaPierre v. Benson Nissan, Inc., 86 F.3d 444 (5th Cir. 1996).

terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin.[20] Disparate treatment occurs when an employer treats one or more individuals less favorably than others because of membership in a protected group as defined by Title VII.[21] The evidentiary framework for analysis of Title VII disparate treatment claims was established by the Supreme Court in McDonnell Douglas Corp. v. Green.[22] In order to overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[23] If the plaintiff cannot prove the claim through direct evidence, the plaintiff may meet the initial burden by offering circumstantial evidence to create an inference of discrimination.[24]

In order to establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must prove that: (1) the employee belongs to a protected class; (2) she sought and was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by [or passed over in favor of] someone outside the protected class.[25] The Fifth Circuit has extended the fourth prong of the plaintiff's *prima facie* case to include that the plaintiff "was replaced by

---

[20] 42 U.S.C. 2000(e)2(a).

[21] International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843 (1977).

[22] 411 U.S. 792 (1973).

[23] Id. at 802-04; Manning v. Chevron Chemical Co., 332 F.3d 874 (5th Cir. 2003); Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000); Shackleford v. Dloitte & Touche, 190 F.3d 398, 404 (5th Cir. 1999).

[24] Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981).

[25] Price v. Federal Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

someone outside the protected class."[26] The *prima facie* case of discrimination, once established, raises an inference of intentional discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.[27] The defendant's burden is satisfied by producing evidence, which "taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action."[28]

The burden then shifts back to the plaintiff to establish pretext and the ultimate question of whether the defendant intentionally discriminated against plaintiff.[29] A plaintiff may either, (1) substantiate her claim of pretext by demonstrating that discrimination lay at the heart of the employer's decision,[30] or (2) submit sufficient evidence to conclude that there was a "motivating factor" for the employer's decision.[31] The ultimate burden of proving intentional discrimination, however, still rests at all times with the plaintiff.[32]

*Racial discrimination*

Defendant concedes that plaintiff is a member of a protected class (white female) who applied for the Cook Supervisor position and was qualified and not selected.[33] The claim cannot be

---

[26] Id.

[27] McDonnell Douglas, 411 U.S. at 802.

[28] St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509,113 S.Ct. 2742(1993).

[29] Haynes v. Pennzoil Co., 207 F.3d at 300.

[30] Rubenstein v. Adm'rs. of the Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir. 2000).

[31] Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2155 (2003).

[32] Hicks, 509 U.S. at 507.

[33] Defendant's memorandum in support of motion for summary judgment, p. 10.

one of race because the selectees were all white. Accordingly, any claim for racial discrimination will be dismissed.

*Retaliation*

To prove retaliation, an employee must prove that: (1) the employee engaged in a protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.[34] Defendant maintains that plaintiff cannot demonstrate a nexus between her protected activity in 2005 and 2006 and her non-selections in 2007. It is undisputed that Warden Young was aware that plaintiff had engaged in prior EEO activity. However, defendant relies on the fact that Warden Young was proposed discipline on May 21, 2007– months after he had selected the Cook Supervisors. Defendant also remarks that plaintiff's prior EEO activity occurred in May 2006, more than 9 months before the selections at issue occurred in February and March 2007. Defendant argues that the temporal proximity is not close enough or is patently insufficient to demonstrate a causal connection, meaning that plaintiff cannot establish a *primae facie* case of retaliation.

Plaintiff relies on Warden Young's lack of credibility during the EEO process underlying the instant litigation citing Byram v. United States.[35] Plaintiff argues that because of Warden Young's lack of truthfulness in the prior EEO investigation, the issue of whether or not Warden Young's decision not to hire plaintiff in the Cook Supervisor position is one that should be made by a trier of fact and not decided pursuant to a motion for summary judgment. Plaintiff argues that Warden

---

[34] Mattern v. Eastman Kodak, 104 F.3d 702, 705 (5th Cir. 1997), cert. denied, 522 U.S. 932 (1997).

[35] 705 F.2d 1418, 1423 (5th Cir. 1983)(" 'findings as to the design, motive and intent with which men act'" are "peculiarly factual issues for the trier of fact." (internal citations omitted).

7

Young had a strong motive to retaliate against her, and that a reasonable jury could conclude that there is significant evidence that the employment decision at issue was motivated by retaliatory animus. Plaintiff remarks that when Warden Young made the Cook Supervisor selections, he knew that an OIA investigation was "looming," and that plaintiff made a charge against him for lying during an investigation which could potentially lead to his termination.[36]

Plaintiff maintains that she was subjected to an adverse employment action when she was not hired for any of the three Cook Supervisor positions. Warden Young, who made the selections, was aware of plaintiff's EEO activity and was acutely aware of the fact that he might be dismissed because of the untruthful statements he made during the investigation, even though he had not yet been disciplined. As stated in Marra v. Phila. Hous. Auth.,[37] a "plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between [her] protected activity and the adverse action taken against [her]." The court finds that plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether or not plaintiff was retaliated against by her non-selection as a Cook Supervisor because of her prior EEO activity.

Plaintiff maintains that defendant's proffered reasons for his selections to fill the Cook Supervisor vacancies was a pretext for discrimination. Plaintiff submits the affidavit of Food Service Administrator Jones who testified that a Cook Supervisor is not responsible for preparing food, but

---

[36] Plaintiff's exhibit 12 (Notice of OIA Inquiry).

[37] 497 F.3d 286, 302 (3d Cir. 2007).

primarily to supervise,[38] which he also deemed the most relevant duty.[39] The Cook Supervisor vacancy announcement sets forth two screen-out elements;[40] (1) the ability to supervise and (2) an aptitude for work with prisoners. Jones testified that plaintiff possessed the ability to supervise and had more years of experience working with inmates than did two of the selectees (Dupre and Fontenot).[41] Plaintiff buttresses her argument by noting that Warden Young stated that he considered factors such as experience in marketing, working large markets, warehousing and displaying of food; plaintiff remarks that feeding a prison population does not involve marketing and/or displaying food. Warden Young also considered the fact that one of the selectees was a butcher, but later admitted that he did not specifically need a butcher for the Cook Supervisor position.[42] Plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether or not Warden Young's explanation or reason for not selecting plaintiff (because the selectees had more experience in large scale food preparation and kitchen operations) was a pretext for discrimination. We further find that plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether or not Warden Young's proffered reasons for failing to select her as the Cook Supervisor is unworthy of credence.

---

[38] Plaintiff's exhibit 26, p. 35 and 38.

[39] Plaintiff's exhibit 27, p. 466. See also deposition of Warden Tamyra Jarvis, plaintiff's exhibit 34, p. 14 and 24.

[40] Critical knowledge, skills and abilities essential for satisfactory job performance. Plaintiff's exhibit 41.

[41] Plaintiff's exhibit 27, p. 474, lines 8-23; plaintiff's exhibit 26, pp. 113-114.

[42] Plaintiff's exhibit 18, p. 121.

*Gender discrimination*

Plaintiff further suggests that the BOP is plagued by a discriminatory culture which gives rise to an inference of sex discrimination.[43] Plaintiff has submitted as summary judgment evidence affidavits of Julie Mattocks, Polly Patrick, and Betty Evans who have stated various complaints about Warden Young and the treatment of women at the BOP.[44] Plaintiff submits the deposition of Cook Supervisor Greer who stated that women "would be more suited to work in a female prison than a male prison."[45] Plaintiff submits the deposition testimony of Food Service Administrator Jones and his concerns regarding plaintiff working with inmates "because she's a female and being in an all male environment there is an extra added situation there that inmates tend to prey on females."[46] Plaintiff also submits the depositions of Daniel Fontenot and Lonnie Dupre who have similar concerns about women working in a male facility.[47] Plaintiff complains that Jones's recommendations of the male selectees and his inferences that a woman could not effectively handle the job could allow a reasonable jury to conclude that Young's acceptance of the sexist attitude within the prison and its incorporation into the hiring process is evidence of Young's discriminatory animus towards women. Hence, plaintiff asserts that she has demonstrated a genuine issue of material fact as to whether the environment and selections within the Food Service Department

---

[43] Tratree v. BP N.Am. Pipelines, Inc., 390 Fed.Appx. 386, 390 (5th Cir. 2010)(unpublished). (Plaintiff's exhibit 35).

[44] Plaintiff's exhibits 37, 38 and 39.

[45] Plaintiff's exhibit 25, Greer depo.

[46] Plaintiff's exhibit 26, pp. 16-17.

[47] Plaintiff's exhibit 24, p. 36.

controlled by Young are tainted with discriminatory animus.

The three affidavits by Mattocks, Patrick and Evans (all females) submitted by plaintiff to support her gender based discrimination were made 17-18 months prior to the Cook Supervisor selection issue and are not in close enough proximity to be deemed causally connected to the non-selection issue. Thus, we find them irrelevant to plaintiff's claim for gender based discrimination. Furthermore, the deposition testimony of the male's paternalistic attitude toward women cannot be characterized to show a gender discriminatory motive by Warden Young regarding the selection issue. Accordingly, we find that plaintiff has failed to submit summary judgment evidence to create a genuine issue of material fact for trial as to her claims for sex based discrimination.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted in part and denied in part. The motion will be granted to the extent that plaintiff's claims of race and sex discrimination will be dismissed with prejudice. Otherwise, the motion for summary judgment will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of March, 2012.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE