RECEIVED

MAR 1 8 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CINDY PATTON | : | **DOCKET NO. 2:10-1467** |
| VS. | : | **JUDGE TRIMBLE** |
| ERIC HOLDER, JR. ATTORNEY GENERAL | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a "Motion to Dismiss and/or in the Alternative, for Summary Judgment" (R. #118) wherein defendant, Eric H. Holder, Jr., Attorney General moves the court to dismiss plaintiff's amended complaint ( R. #113) on the basis of lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or Federal Rule of Civil Procedure 12(b)(6); Defendant seeks to dismiss plaintiff's new claim for retaliation for a Letter of Reprimand filed on June 19, 2012 for failure to exhaust administrative remedies. Alternatively, defendant seeks to dismiss plaintiff's claim pursuant to Federal Rule of Civil Procedure 56(b). Because both parties have submitted evidence outside of the amended complaint, the court will consider the motion as a motion for summary judgment. Also before the court is "Defendant's Third Motion for Summary Judgment" (R. #151) wherein defendant, relying on recent U.S. Supreme Court precedent decided after the original motion for summary judgment was filed and decided by the undersigned, move to dismiss plaintiff's retaliation claim because plaintiff's evidence does not support that her prior EEO activity was the "but-for" cause of the non-selections at issue.

## FACTUAL STATEMENT

Plaintiff, a Caucasian female, has been an employee for the Federal Bureau of Prisons' Federal Correction Complex in Oakdale, Louisiana since October 1995. On December 28, 2006, vacancies for the Cook Supervisor position were announced; plaintiff applied for the position on January 19, 2007. Plaintiff qualified for the "best qualified" list which was forwarded to Warden Joseph Young. Warden Young selected Dupre and Greer on February 23, 2007 and Fontenot March 9, 2007; each of these selectees were white males.

Plaintiff had engaged in prior EEO activity in 2005 against Associate Warden Brouillette.[1] During that investigation, on August 10, 2005, Warden Young provided a statement. With respect to that statement, plaintiff reported that Warden Young had made false statements. After an investigation, the Office of Internal Affairs (OIA) found that Warden Young had provided inconsistent or inaccurate statements to the EEO investigator regarding the earlier EEO complaint filed by plaintiff; on July 7, 2007, Warden Young was suspended for 15 days.

In January 2010, plaintiff again  applied for the position of Cook Supervisor; she was the successful candidate on March 28, 2010.

On July 17, 2011, plaintiff intervened in a conversation between an inmate visitor, Ms. Messengill, and Officer Dana Granger. Officer Granger was attempting to explain to the visitor why her young daughter was dressed inappropriately or in violation of the dress code for visitors. Plaintiff stated to the visitor, in the presence of the child, that "[w]hat she [Ms. Granger] is trying to tell you is that there are child molesters back there and this could cause problems in the visiting room." On

---

[1]OIA found that Warden Broulette had engaged in misconduct towards plaintiff; despite the misconduct, Warden Young reassigned Brouillette to oversee plaintiff's department.

April 2, 2012 defendant issued Ms. Patton a Notice of Proposed One Day Suspension which was rescinded and reissued on April 17, 2012 and April 23, 2012. The Proposed One Day Suspension ("Proposal") was ultimately amended to a Letter of Reprimand ("LOR") which was placed in plaintiff's personnel file. The Proposed Notice of One Day Suspension/LOR was in response to an alleged complaint via email made by Ms. Messengill to FCC Oakdale. Plaintiff remarks that defendant has not been able to produce this alleged email. Another visitor, Michelle Roy, also emailed FCC Oakdale about the incident on July 19, 2011.

On May 7, 2012, Ms. Patton responded to the Proposal alleging that it was in retaliation for her protected activity in her pending civil action in district court. On April 6, 2012, Ms. Patton made EEO contact and filed a formal EEO complaint on July 17, 2012.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-

---

[2] Fed. R.Civ. P. 56(c).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

3

moving party's claim."[5]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8]  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

In its motion, defendant maintains that plaintiff failed to exhaust her administrative remedies before filing her amended complaint and asserting the retaliation claim.  Alternatively, defendant seeks to dismiss the retaliation claim because there is no adverse employment action or causal connection between plaintiff's 2007 non-selections and the LOR issued in June 2012; defendants maintain that plaintiff cannot establish a *prima facie* case of retaliation.  Lastly, defendant maintains that the Agency has articulated a legitimate, non-discriminatory reason for the issuance of the LOR.

*Exhaustion of administrative remedies*

Defendant maintains that the claim listed in paragraph four of the Amended Complaint

---

[5]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6]  Anderson, 477 U.S.  at 249.

[7]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[8]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9]  Anderson, 477 U.S. at 249-50.

4

(retaliation) should be dismissed because the court does not have subject matter jurisdiction. Defendant argues that plaintiff failed to exhaust her administrative remedy as to this claim.

42 U.S.C. § 2000e provides that there are two requirements for filing a Title VII action in federal court: (1) the complaint must be filed within the time allotted by Title VII, and (2) the complainant must first have exhausted her administrative remedies.[10] Plaintiff relies on Gupta v. East Texas State University,[11] which held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."[12]

Defendant relies on Nat'l R.R. Passenger Corp. v. Morgan,[13] and subsequent jurisprudence that have held that any unexhausted additional claims by a plaintiff must be within the scope of the prior EEO investigation to qualify for simultaneous consideration without separate investigation and processing in order to be properly before the court without the new claim having to need independent exhaustion requirements.[14] Defendant argues that the LOR issued June 19, 2012 constitutes a discrete act for which plaintiff must exhaust administrative remedies prior to proceeding in district court.

---

[10] Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990).

[11] 654 F.2d 411 (5th Cir. 1981).

[12] Id., at 414.

[13] 536 U.S. 101 (2002).

[14] Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 852-53 (8th Cir. 2012); Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010); McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273-75 (5th Cir. 2008); Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003).

Therefore, defendant seeks to dismiss plaintiff's new retaliation claim.

Plaintiff further relies on jurisprudence after Morgan wherein the Fifth Circuit has applied Gupta and consistently held that a plaintiff is not required to exhaust administrative remedies when asserting a retaliation claim growing out of an administrative charge that is properly before the court.[15]

In further analyzing Morgan after Gupta, the court in Finnie v. Lee County,[16] noted that:

> Morgan merely reemphasized the importance of treating discrete acts separately for the purpose of determining when the time limits for filing a charge with the EEOC expire. Morgan further never addressed the policy considerations Gupta took into account in deciding that a plaintiff need not file a new charge with the EEOC when a new discrete act 'grows out' of an act for which the plaintiff has already filed a charge with the EEOC. [U]ntil the Supreme Court or the Fifth Circuit reassesses the holding in Gupta, this Court is bound to follow its holding.

Plaintiff argues that the June 19, 2012 LOR is in retaliation for the present civil action, and thus plaintiff need not exhaust any administrative remedies. Plaintiff relies on the following series of events to support her position that the June 19, 2012 LOR was a retaliatory act for her prior EEOC activity:

> Early 2004 - Plaintiff complains to OIA about Associate Warden Brouillette's inappropriate physical conduct and unprofessional conduct.

---

[15] Stephens v. City of Bastrop, 3:10-CV-1102, 2011 U.S. Dist. LEXIS 128272, at *19-20 (W.D. La. Nov. 3, 2011); Lewis v. City of Ruston, La., No. 07-0092, 2008 U.S. Dist. LEXIS 92910, at *8 (W.D. La. Nov. 6, 2008); LaCaze v. W.W. Grainger, Inc., Civ. A. No. 03-2202-2005 WL 1629936 (W.D. La. July 7, 2005) aff'd 170 Fed. Appx. 365 (5th Cir. 2006)("Retaliation resulting from the filing of an EEOC charge does not have to be charged again.")

[16] No. 1:10 cv 64-A-S, 2012 U.S. Dist. LEXIS 6679, at *5 (N.D. Miss. Jan. 17, 2012).

March 9, 2004 - plaintiff initiated EEO counseling[17]

 On June 30, 2004, Plaintiff files EEO complaint against Associate Warden Brouillette and Warden Young for sex discrimination

On November 17, 2004 the Agency dismisses plaintiff's claims as untimely

Plaintiff files a civil action on February 4, 2005

On or about twenty days after she filed the civil action, Warden Young assigns Brouillette to manage the Health Services Department where plaintiff worked.

Plaintiff finds out that Warden Young lied during the OIA investigation

Plaintiff contacts OIA about lies; OIA investigates and finds merit to plaintiff's allegations resulting in a 15 day suspension for Warden Young

On February 6, 2006, plaintiff filed an EEO complaint alleging that defendant discriminated against her on the bases of race, sex and reprisal for engaging in prior EEO activity.

February 23, 2007 - plaintiff applied for and was qualified for Cook Supervisor, but was not chosen

March 9, 2007 - plaintiff applied for and was qualified for Cook Supervisor, but was not chosen

September 23, 2010 - plaintiff files the instant suit in district court

June 22, 2011 - Plaintiff notices deposition of Warden Young, Aaron Jones (the recommending official in the non-selection issues and Proposals of Suspension), Fontenot, Greer, Dupre, Chris Franklin and Mark McCloskey.[18]

July 17, 2011 - plaintiff makes the alleged inappropriate comment to an inmate visitor

July 17, 2011 - Boyle testifies that Warden Young is made aware of the comment and that

---

[17] The first step of an employee alleging discrimination to exhaust her administrative remedies is to consult a counselor within 45 days of the alleged discriminatory event. 29 C.F.R. § 1614.105(1)(1). (referred to as "counselor contact"); if the alleged discrimination is unresolved, then the employee files a complaint with the EEOC. 29 C.F.R. § 1614.105(d)(2013).

[18] Plaintiff's exhibit 17.

"he directed a referral for misconduct to be completed."[19]

July 19, 2011 - an inmate visitor sends an email to Warden Young at FCC Oakdale complaining that plaintiff's July 17, 2011 comment was "unprofessional and disrespectful" and "demeaning." [20]

July 21, 2011 - Special Investigative Agent Jerry Cramer at FCC Oakdale and Acting Warden Boyle referred the visitor's complaint to OIA, noting that [t]he Warden is requesting an on-site investigation.[21]

July 27-29, 2011 - plaintiff's attorney conducts depositions on-site at FCC Oakdale; Plaintiff's civil trial is scheduled for October 23, 2011[22]

October 17, 2011 - OIA Investigator Sonya Carney conducts an on-site investigation.[23]

November 26, 2011 - OIA concludes that the allegation was sustained and plaintiff was in violation of Program Statement 3420.09(9)[24] Standards of Employee Conduct; plaintiff "made an inappropriate statement to a visitor while her children were present."[25]

November 26, 2011 - OIA notifies Warden Young that investigation is closed.

February 8, 2012 - Chandler received email from BOP general counsel, Sonya Cole, that mediation in the instant suit had been canceled

February 9, 2012 - after unsuccessful settlement negotiations regarding the instant lawsuit, the parties cancel a mediation.

---

[19]  Plaintiff's ex. 2, at 5.

[20] Plaintiff's Ex. 10.

[21]  Plaintiff's Ex. 10.

[22]  R. #14.

[23]  Plaintiff's ex. 10 at 1.

[24] This statement provides that "[I]t is essential to the orderly running of any Bureau facility that employees conduct themselves professionally." Id., at 17, Program Statement at 7.

[25] Plaintiff's ex. 10 at 1.

March 2, 2012 - defendant files a response to plaintiff's Motion to Compel[26]

March 26, 2012 - This court issues a Memorandum Ruling granting in part and denying in part defendant's motion for summary judgment.[27]

April 2, 2012 - Jones issues plaintiff's first Proposal of Suspension for an "Inappropriate Comment made on July 17, 2011.[28] Jones cites to subsections (9)(c)(3) of Program Statement 3420.09.[29] This proposal designates Warden Young as the deciding official.

April 6, 2012  - Plaintiff makes EEO contact regarding the proposed suspension.

April 17, 2012 - Chandler receives e-mail from Employer Relations mentioning Plaintiff's suit discrimination against Warden Young[30]

April 17, 2012 - a new Proposal to plaintiff is used changing the language in the Proposal regarding plaintiff's response from "calendar days" to "working days."[31]

April 23, 2012 - defendant issues a third Proposal to plaintiff which contains a letter from Jones stating that the Proposal was "being reissued in order to change the deciding official from Warden Young to Deputy Regional Director [Chandler]."[32]

May 7, 2012 - Chandler receives plaintiff's response and supplemental response to Notices of Proposed Suspension ( the responses state that plaintiff believes the proposed suspension was retaliation for protected activity from her pending civil action)

May 12, 2012 - Chandler receives plaintiff's response and supplemental response to Notices of Proposed Suspension ( the responses state that plaintiff believes the proposed suspension was retaliation for protected activity from her pending civil action)

---

[26] R. #92.

[27] R. #100 and 101.

[28] Plaintiff's exhibit 12, proposal at 10.

[29] This statement provides that "[a]n employee may not use intimidation toward . . . any visitor to a Bureau work site." Id. (Emphasis added)

[30] Plaintiff's exhibit 4, e-mail dated April 17, 2012.

[31] Plaintiff's exhibit 13 at 1.

[32] Id. at 2.

May 30, 2012 - Plaintiff supplements her response with an affidavit from Officer Granger, stating that she believed that "Ms. Patton was just trying to help" that she "did not raise her voice and spoke in a normal tone" and that "[s]he did not speak in an intimidating way."[33]

June 19, 2012 - Chandler issues plaintiff a LOR for the "Inappropriate Comment"[34]

July 17, 2012 - Plaintiff files a formal EEO administrative complaint.[35]

September 7, 2012 - plaintiff files the Amended Complaint asserting new retaliation claim as to June 19, 2012 LOR

Plaintiff argues that her retaliation claim falls squarely withing the Gupta exception because defendant's OIA investigation, multiple Proposals and LOR which occurred after she properly exhausted claims already before this Court, are reprisal for her properly exhausted non-selection claims already before this court.   Plaintiff remarks that it is undisputed that claims 1 through 3 in her Amended Complaint were properly exhausted and active before the Court when defendant issued the Proposals and LOR to plaintiff.

Defendant urges the court to dismiss all allegations pertaining to the June 19, 2012 LOR because plaintiff made a formal EEO complaint on July 17, 2012 wherein she alleged both discrimination based upon sex and reprisal.   Therefore, defendant maintains that it would be incompatible with the EEOC process.

---

[33]  Plaintiff's exhibit 8 at 3.

[34]  Chandler notes that plaintiff "should have approached the situation in a professional manner rather than using child molester as an intimidation tool to make [her] point" and that plaintiff violated policy which mandates that the front officer should contact an Operations Lieutenant if the officer determines that visitors' attire is questionable. Id. The LOR states that "future misconduct *may result in further disciplinary action, up to and including removal*" and that the letter would "remain in [Plaintiff's] Official Personnel Folder for a period not to exceed two years." Plaintiff's exhibit 16 (emphasis added).

[35]  Amended Complaint, ¶ 63.

"[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[36] The bases for Ms. Patton's 2006 charge of discrimination were (1) race, (2) sex, and (3) retaliation for prior EEO activity.[37] Defendant argues that the June 19, 2012 LOR is a discrete act that is not within the scope of the 2006 EEO investigation because it could not reasonably be expected to encompass an event which occurred four years after the investigation was completed.

Plaintiff maintains that there are genuine issues of material fact for trial as to whether or not Warden Young (the decision maker on the non-selections at issue) had any involvement in the OIA investigation and discipline of plaintiff, and whether or not Regional Director Rodney Chandler (the decision maker on the Proposals and LOR) had knowledge of plaintiff's prior protected activity at the time he made the decision to issue plaintiff a LOR in June 2012.

Plaintiff submits as summary judgment evidence Chandler's deposition testimony wherein he testified under oath that he only became aware of plaintiff's pending civil action when he learned that he was being deposed.[38] Chandler was noticed on November 30, 2012 and re-noticed of the deposition on December 28, 2012. Plaintiff also submits as summary judgment multiple email communications which she alleges contradict his testimony. Specifically, (1)Warden Young's deposition testimony that he may have had communications with Chandler regarding the Notices of

---

[36] McClain v. Lufkin Indus.,Inc., 519 F.3d 264, 274-75 (5th Cir. 2008).

[37] Plaintiff alleged that from October 19, 2005 to March 26, 2007, she was harassed with negative performance log entries, time and attendance, unusually close supervision with unwarranted criticism, assignment of duties, threatening gestures and humiliating comments; she received a one day suspension effective May 1, 2006; she was not selected for the Cook Supervisor position on February 23, 2007 and again on March 9, 2007.

[38] Plaintiff's exhibit 1, Rodney Chandler depo., p. 106:3-24; p. 107:1.

Proposed Suspension,.[39] (2) April 17, 2012 email received by Chandler discussing plaintiff's EEO cases against Warden Young,[40] (3) Chandler directly received plaintiff's response and supplemental response on May 7, 2012 and May 30, 2012 respectively, which state that plaintiff believed that the proposed suspension was retaliation for protected activity from her pending civil action.[41]  All of these communications were received by Chandler prior to him receiving the notice of deposition and prior to him making the Proposals for Suspension. Also noteworthy, plaintiff submits an email from Assistant General Counsel Sonya Cole to Chandler on February 8, 2012 which stated, "Just wanted to let you know that the Patton mediation scheduled for 12 noon tomorrow has just been canceled."[42] The court finds that plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material of fact for trial as to whether or not the LOR was a retaliatory act for plaintiff's prior protected activity.

*Has plaintiff established a primae facie case?*

As previously noted, plaintiff has asserted a new retaliation claim in the Amended Complaint. To prove retaliation, an employee must establish that: (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.[43]  Defendant

---

[39]  Plaintiff's exhibit 3, def.'s interrog. Resps. at 2 (Dec. 20, 2012).

[40]  The email expressly stated: "As we speculated, the reason for the Warden not being the deciding official is due to the EEO case/cases she has filed against the Warden." Plaintiff's exhibit #4.

[41]  Plaintiff's exhibit 6; plaintiff's exhibit 7, plaintiff's exhibit 9.

[42]  Plaintiff's exhibit 8.

[43]  McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

maintains that the new retaliation claim has no causal connection to plaintiff engaging in prior protected EEO activity. Defendant seeks to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Alternatively, defendant maintains that plaintiff does not give any direct evidence in the Amended Complaint to show why she believes that the LOR was issued to her in retaliation for engaging in protected activities from 2005, nor has she brought forth circumstantial evidence regarding her claimed retaliation.  Specifically, defendant suggests the plaintiff has failed to present evidence that any of the deciding officials had knowledge of her prior EEO activity. Defendant further maintains that the LOR is not an adverse employment action.

Plaintiff acknowledges that she has the burden of establishing a *prima facie* case of discrimination.[44]  Plaintiff notes that she filed the instant civil action on September 23, 2010 alleging non-selections as the basis for retaliation for protected EEO activity.  Plaintiff also submits summary judgment evidence (as noted above) to create a genuine issue of material fact for trial that the deciding official – Chandler – had knowledge of her prior protected activity. It is undisputed that Warden Young had prior knowledge.   Plaintiff has submitted summary judgment evidence to establish a genuine issue of material fact as to Warden Young's involvement in the decision making process regarding the LOR.[45]

Plaintiff has also submitted summary judgment evidence which established the series of events that have transpired during the investigation and proposals of suspension and LOR, such as the depositions, unsuccessful settlement negotiations, canceled mediation, the issuance by the

---

[44] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[45] Acting Warden Boyle testified that Young "directed a referral for misconduct to be completed." (Plaintiff's exhibit 2 at 5) and that Young initiated the OIA investigation of plaintiff (Id. at 4).

13

undersigned of a memorandum ruling and judgment, a motion to compel, etc. Plaintiff further rebuts defendant's attempt at minimizing the effect of the LOR that would be put in plaintiff's personnel file for two years by referencing the language of the LOR which expressly states that any future misconduct could include removal. In other words, the LOR could be used against plaintiff for future disciplinary action. In view of the possible detrimental effect of the LOR in the future, it is the ruling of the court that the LOR does constitute an adverse employment action. The court finds that plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether or not there is a causal connection between the LOR and plaintiff's prior protected activities.

*Pretext*

In their motion, defendant informs the court of the Supreme Court's recently modified proof requirement in a Title VII retaliation claim.  In University of Texas Southwestern Medical Center v. Nassar,[46] the Court held that instead of the lessened causation test stated in 42 U.S.C. § 2000e-2(m), a plaintiff must prove that the employer's unlawful motive is the "but for" cause and not simply a motivating factor in the adverse action. Defendant argues that their legitimate non-discriminatory reason for imposing the LOR was because plaintiff made an inappropriate comment to an inmate visitor to FCC Oakdale. Thus, defendant maintains that plaintiff cannot demonstrate that the defendant's motive in retaliating against her for her prior protected EEO activity was the "but for" cause for issuing the LOR.

Plaintiff posits that a reasonable jury could conclude that defendant's reason – plaintiff made an inappropriate comment to a female visitor – is false and a pretext for discrimination.  Plaintiff

---

[46]  __ U.S. __, 2013 WL 3155234 (June 24, 2013).

relies on the shifting reasons (from "inappropriate comment" to an "intimidation tool") offered by defendant to explain the OIA investigation, the multiple Proposals of Suspension to plaintiff, and the LOR ultimately received by plaintiff.  Plaintiff remarks that the inmate visitor that complained via email never used the term "intimidating" or "threatening." Another inmate visitor (Busch) stated when interviewed that she "did not think the officers [sic] comments were inappropriate because she [plaintiff] was trying to explain why they were making the little girl change."[47] Officer Granger testified that she did not think plaintiff "was trying to offend anyone there,"[48] and that plaintiff did not raise her voice or speak in an intimidating way.[49] The OIA investigator testified that she would not use the word "intimidating" to describe plaintiff's comment,[50] nor did she believe plaintiff was threatening.[51]

Plaintiff also takes issue with the different sections of the Program Statement (section 3420.09(9), 3420.09 § (c)(3) and 3420.09 § (c)(4)) used in investigating and disciplining plaintiff noting that Investigator Carney testified that the subsections of Program Statement 3420.09(9) are different and separate codes for additional conduct issues.[52]  Plaintiff also remarks that Chandler referred to policy sections about plaintiff's alleged misconduct that were never identified in any of the Proposals for Suspension.

---

[47]  Plaintiff's exhibit 10, at 35, 40,41,42.

[48]  Id. at 33.

[49]  Plaintiff's exhibit 8 at 3.

[50]  Plaintiff's exhibit 19, Carney Depo., p. 106:7-12.

[51]  Id.

[52]  Id., Carney depo., pp. 50-51.

15

Finally, plaintiff challenges Chandler, Young and Jones' disregard for the OIA investigation itself submitting their testimony that (1) Chandler did not consult the OIA's findings in determining plaintiff's discipline, further commenting that he was not sure anyone reviewed the OIA files, (2) Chandler had the authority to find plaintiff used child molester as an intimidation tool, even though the OIA found plaintiff's conduct "unprofessional,"[53] (3) Jones denied all involvement with the Proposals, and (4) Warden Young orchestrated the OIA investigation and discipline against her.

The court finds that plaintiff has created a genuine issue of material fact for trial as to whether or not defendant's nondiscriminatory reasons for the LOR were merely pretextual.

### THIRD MOTION FOR SUMMARY JUDGMENT[54]

The third motion for summary judgment also brings to light the Supreme Court's recent ruling in Nassar,[55] which requires a plaintiff to prove that the alleged unlawful retaliation with respect to not promoting plaintiff to the Cook Supervisor position would not have occurred in the absence of the alleged wrongful action(s) of the employer.  Defendant suggests that the Supreme Court's holding appears to be in conflict with the reasoning applied by this court in denying defendant's prior motion for summary judgment.[56]   In that ruling, the undersigned granted defendant's motion for summary judgment, dismissing with prejudice plaintiff's race and sex discrimination claims, but I denied the motion as to plaintiff's reprisal claim for engaging in prior

---

[53] Plaintiff's exhibit 4, p. 26:15-21; p. 34:21-25; p. 35;3.

[54] For a complete recitation of the facts in this case see the Memorandum Ruling in R. #100.

[55] supra.

[56] R. #32, 100 and 101.

EEO activities in 2005 and 2006.[57] The court has reviewed the Supreme Court's recent ruling and concludes that there is a genuine issue of material fact for trial as to whether or not plaintiff was not selected for the Cook Supervisor but for her prior EEO activities.

This court previously held that "Warden Young, who made the selections, was aware of [Patton's] EEO activity and was acutely aware of the fact that he might be dismissed because of the untruthful statements he made during the investigation, even though he had not yet been disciplined."[58] We further concluded that "plaintiff has submitted sufficient summary judgment evidence to created a genuine issue of material fact for trial as to whether or not plaintiff was retaliated against by her non-selection as a Cook Supervisor because of her prior EEO activity."[59]

We also ruled that there was a genuine issue of material fact for trial as to Warden Young's proffered reasons for failing to select plaintiff as the Cook Supervisor because his credibility was unworthy of credence.

First, defendant challenges the timing of the previous EEO complaint in 2005 and the adverse employment action in February 2007. Plaintiff asserts that her EEO activity was on going at the time of the non-selections. She initially filed her EEO complaint in February 2006 alleging discrimination, harassment, and retaliation and named Warden Young as one of the responsible management officials. She amended her complaint in 2006 and again in 2007 alleging retaliation. Plaintiff also notes that her allegations to OIA relate directly to her EEO activity because she reported to OIA that Young lied to the EEO Investigator who was interviewing him for her prior EEO complaint. We find

---

[57] R. #100 and 101.

[58] R. #100, p. 8.

[59] Id.

17

that the investigation was ongoing from 2005 and continued in 2006 and 2007. Therefore, for the reasons set forth above and the reasons and authority cited in our previous Memorandum Ruling,[60] we find no merit to defendant's temporal proximity argument.

Next, defendant argues that plaintiff cannot demonstrate that the defendant's "but-for" reason for not selecting her for the Cook Supervisor positions in 2007 was for filing a prior EEO complaint. Defendant insists that plaintiff has not submitted any direct evidence of reprisal and cannot establish a causal link between the challenged non-selections and her prior EEO activity. Defendant maintains that plaintiff's EEO complaint in 2005 is too far removed from defendant's non-selection activity, and her complaint of Warden Young's lies during an OIA investigation is not a protected activity.

Defendant also challenges plaintiff's assertion that she had engaged in a "protected activity." Even though plaintiff reported on January 27, 2006 that Warden Young had lied during an OIA investigation in an August 10, 2005 affidavit, defendant maintains that this act of reporting does not constitute a protected activity under Title VII.[61] Defendant cites various cases holding that certain activities such as internal investigations are not protected under Title VII.[62]

---

[60] R. #100.

[61] An employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice by this subchapter," (opposition clause) or "made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (participation clause) 42 U.S.C. § 2000e-3(a)(2013).

[62] Lyles v. Texas Alcohol Beverage Comm'n, 379 F.App'x 380 (5th Cir. 2010)(complaint to the Office of Professional Responsibility did not oppose unlawful employment practice pursuant to Title VII, thus not protected activity); Riley v. Napolitan, 2013 WL 3820624 at *2 (5th Cir. 2013)(e-mail sent by plaintiff to management officials did not constitute an unlawful employment practice under Title VII; complaint was too general); Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41, 49 (2d Cir. 2012) (an investigation under

Plaintiff argues that not only does the record establish that there is a genuine issue of material fact for trial as to whether or not she was retaliated against for her participation in a protected activity, but she is also protected from retaliation when she opposed defendant's discrimination, even if that opposition is not part of the formal EEO process. Relying on Crawford v. Metro. Gov't of Nashville & Davidson County,[63] plaintiff argues that she opposed defendant's discrimination when she complained to the OIA about Warden Young's false statements; she also alleged that he created a hostile work environment, harassed, discriminated and retaliated against her.[64] In Crawford, the Supreme Court held that "[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity."[65] Thus, plaintiff maintains that in addition to being protected by the participation clause, she is also protected under the opposition clause when she initiated an investigation into unlawful practices ( harassment, discrimination and retaliation) under Title VII by defendant.

Defendant next challenges plaintiff's qualification in comparison to the three selected candidates. As recalled by defendant, plaintiff was on the "best qualified" list, along with Lonnie

---

42 U.S.C. § § 2000e-2000e-17 "plainly refers to an investigation that 'occur[s] in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal in-house investigation, conducted apart from a formal charge with the EEOC"); Hatmaker v. Memorial Med. Ctr., 619 F.3d 741, 746-47 (7th Cir. 2010)(participation clause is limited to official investigations under section 2000e-3 and no protection from opposition clause because plaintiff did not have a reasonable belief of a Title VII violation).

[63]  555 U.S. 271 (2009).

[64]  R. #54-12, p. 1. (The OIA did not sustain her claim of retaliation).

[65]  555 U.S. 271, 276 (2009).

Dupre, Michael Greer and Daniel Fontenot (the "selectees").  However, defendant maintains that

plaintiff cannot demonstrate that defendant's "but-for" reason for not selecting her for the Cook

Supervisor position in 2007 was due to her filing a prior EEO complaint.

Defendant remarks that in order to demonstrate that differing qualifications constitute

evidence of pretext, plaintiff must show that the selectees were clearly better qualified.[66] We agree

that plaintiff must establish that she was clearly better qualified.

In rebuttal, Plaintiff remarks that she scored significantly higher than Fontenot and Greer.[6768]

Plaintiff was the only candidate with an Associate Degree in Criminal Justice. The Vacancy

Announcement for the position required the following Knowledge, Skills, and Abilities: "Ability to

Supervise; Aptitude for Work with Prisoners; Work Practices; Technical Practices; Ability to

Interpret Instructions, Specifications, etc.; Ability to [U]se and [M]aintain [T]ools and [E]quipment;

Knowledge of Materials; Dexterity and Safety."[69]  Plaintiff submits that she had more supervisory

experience than Fontenot, and that Jones confirmed that Fontenot barely made the cut-off "[a]s far

as his qualifications and his score ranking."[70]  Plaintiff notes that she wrote four pages of detailed

_____

[66]  Torralba v. Napolitano, 2010 WL 4812971 at *9 (5th Cir. Nov. 18, 2010)(quoting
E.E.O.C. v. Louisiana Office of Cmty. Servs., 47 F.3d 1438, 1445 (5th Cir. 1995), overruled on
other grounds by Kimel v. Florida Bd. Of Regents, 528 U.S. 62 (2000)).

[67]  Plaintiff scored 57 points, Fontenot scored 42 points and Greer scored 46 points.
Dupre scored highest with 65 points.

[68]  Plaintiff focuses only on  evidence as to  Fontenot in the interest of economy in
responding to defendant's third motion for summary judgment.

[69]  R. #54-32, at 1.

[70]  R. #54-27, at 20 (Jones Dep. Tr. P. 114:17-23).

descriptions regarding her supervisory experience, whereas Fontenot wrote just over one page.[71]

In demonstrating the "where, when and how" of the applicant's experience in instructing other workers, plaintiff offered numerous examples of training staff and inmates, including training or instructing: (1) employees to handle food items and their storage; (2) on how to safely and properly use, clean, disinfect, assemble and disassemble [kitchen] equipment, cooking surfaces and [food] preparation areas; (3) employees as to cooking times and temperatures of foods prepared; (4) staff on  procedures and legal issues relating to medical records including filing and auditing;  (5) as to policy procedures for an inpatient psychiatric hospital; (6) as to how to set up chronic clinics, (7) inmates on how to clean blood spills using chemicals and protective gear; (8) inmate orderlies on how to safely clean infectious waste.   Plaintiff submits that Fontenot did not include any examples of his "instruction for other workers."[72]

Plaintiff has submitted summary judgment evidence that she had significantly more experience than Fontenot regarding having an aptitude for working with prisoners, noting that she had worked with inmates every day for the previous thirteen and one half years.[73] Fontenot provided no details or computation of the time he spent working with prisoners.[74] Plaintiff provided detailed examples of situations where she found it necessary to use "Command" orders rather than "Request" orders including four specific instances, whereas Fontenot generally explained that he had used

_____

[71] R. #33; Defendant's sealed exhibit 2, p. 116-117.

[72] Id.

[73]  R. # 54-22, p. 12.

[74] R. #33; Defendant's sealed exhibit 2, p. 116-117.

"direct verbal orders" at "various times."[75]

Plaintiff responded to a request for examples of her experience in dealing with persons having personal problems by noting that she had worked with persons "with extreme personal and mental problems" since 1978, including terminally ill inmates.[76] Fontenot's response was that he had "listened to inmates problems when they showed signs of depression are [sic] possible suicidal behavior."[77] Jones testified that plaintiff had more experience working with prisoners than Fontenot and Dupre.[78]

Defendant relies on Warden Young's testimony that in selecting a Cook Supervisor, he considered the applicant's technical experience in the preparation of large food stocks, large scale food preparation, stockpiling food, warehousing and food handling. He testified that he did not recall that plaintiff had experience in institution-type setting or food service experience. Therefore, defendant argues that his selection of a better qualified applicant over plaintiff does not constitute pretext and is a legitimate, non-discriminatory reason for a promotion decision.

We find that plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether defendant's non-selection of her as Cook Supervisor would not have occurred but for her prior protected EEO activity and whether or not defendant's reasons for the non-selections were pretextual.

## CONCLUSION

---

[75] R. #22, Defendant's exhibit 2, p. 118.

[76] R. #54-22, p. 12-14.

[77] R. # 33, defendant's exhibit 2, p. 118.

[78] R. #54-28, p. 5, Jones EEOC Hearing tr. P. 474:4-23.

For the reasons set forth in our previous Memorandum Ruling and those set forth herein, the court affirms our previous finding that there is sufficient summary judgment evidence to establish a "but for" causal connection between plaintiff's protected activities and her allegations of retaliation.[79]   We find that there is a genuine issue of material fact for trial as to whether or not plaintiff was clearly better qualified. We further find that there is a genuine issue of material fact for trial as to whether or not defendant has offered a legitimate, non-discriminatory reason for the Cook Supervisor selections at issue. We further find that there is a genuine issue of material fact for trial as to whether defendant intentionally discriminated against plaintiff in not selecting her for the Cook Supervisor position.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 18th day of March, 2014.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[79] We find no merit to defendant's argument that because Warden Young ultimately promoted plaintiff to the Cook Supervisor position in 2010, that this refutes plaintiff's allegations that he previously discriminated against her.